UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| Plaintiff, | : | 1:10-CV-0513 (NAM/RFT) |
| | : | |
| -against- | : | |
| | : | |
| MATTHEW JOHN RYAN and | : | |
| PRIME RATE AND RETURN, LLC, | : | |
| individually and doing business as | : | |
| AMERICAN INTEGRITY FINANCIAL CO., | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

### PLAINTIFF'S AND RECEIVER'S JOINT MEMORANDUM OF LAW CONCERNING THE INADVISABILITY OF A BANKRUPTCY FILING

Plaintiff Securities and Exchange Commission (the "Commission") and Paul Levine,

Esq., the Court-appointed Receiver over defendant Prime Rate and Return LLC ("Prime Rate"),

respectfully submit this joint memorandum of law as directed by the Court in its Order dated

May 3, 2011 ("Order"). For the reasons set forth below and in the Receiver's accompanying

affidavit, the Commission and the Receiver respectfully submit that the substantial costs and

likely delays of a bankruptcy proceeding for Prime Rate render any such proceeding inadvisable

now and in the future.

### STATEMENT OF RELEVANT FACTS

Unlike a bankruptcy proceeding in which there are substantial funds to distribute to

creditors, Prime Rate's assets are unlikely to be worth more than $160,000. (Affidavit of

Receiver with Regard to Bankruptcy Issues ("Receiver Aff.") ¶¶ 6.k – 6.l.) That is likely to be

the total amount available to distribute not only to victims of defendant Matthew Ryan's Ponzi

scheme and other creditors of Prime Rate, but also to compensate the Receiver and his law firm,

who have yet to be paid. (*Id.*) Ryan has already pleaded guilty to securities fraud and admitted

that he took more than $4.8 million from investors, of which he used more than $1.6 million for

his own and Prime Rate's expenses. *See United States v. Ryan*, Case No. 10-CR-319 (NAM),

Plea Agreement (Docket Entry No. 9) ¶¶ 5.l & 5.m (Feb. 22, 2011).  Prime Rate's remaining

assets will not be enough to provide even a return of ten cents on the dollar to the victims of

Ryan's Ponzi scheme.

Because of its cost, a bankruptcy proceeding for Prime Rate would substantially reduce

even the small amount available to compensate victims and other creditors.  (Receiver Aff. ¶¶ 6.a

– 6.h.)  A bankruptcy proceeding would likely cost more than $50,000 – almost one-third of

Prime Rate's expected assets before distribution – due to legal and other fees, including the fees

of the Office of the United States Trustee and additional Receiver fees for administrative costs

such as the filing of monthly reports with the Trustee's Office.  (*Id.*)

A bankruptcy proceeding would also likely further delay any eventual distribution to

victims and other creditors.  (*Id.* at ¶ 6.r.)  Many of Ryan's victims are already over the age of

60.  (Decl. of Simone Celio Jr. in Support of Pl.'s Emergency Application for an Order to Show

Cause, TRO and Other Relief ¶ 13.)

## ARGUMENT

**I.**     **Liquidation Through the Receivership Is Preferable In This Case to Bankruptcy.**

Although the Second Circuit has expressed a "preference against the liquidation of

defendant corporations through the mechanism of federal securities receiverships, as opposed to

through the bankruptcy courts," it has "never vacated or modified a receivership order on the

ground that a district court had improperly attempted to effect a liquidation." *SEC v. Malek*, 397

Fed. Appx. 711, 714, 715 (2d Cir. Oct. 25, 2010) (quoting in part *SEC v. American Bd. of Trade,*

*Inc.*, 830 F.2d 431, 437 (2d Cir. 1987)).  The Second Circuit has instead routinely approved the

district courts' discretion in liquidations and distributions conducted through receiverships in

Commission enforcement proceedings.  *See, e.g., Malek*, 397 Fed. Appx. at 714-16; *SEC v.*

*Credit Bancorp, Ltd.*, 290 F.3d 80, 85-91 (2d Cir. 2002).  In this case, the costs of a bankruptcy

proceeding would reduce the assets available to compensate the victims of Ryan's Ponzi scheme

by approximately one third, and the bankruptcy process would likely delay any distribution to

investors.  Unlike a case where there are substantial unencumbered monies to distribute for

which bankruptcy may lend a framework, a bankruptcy here would serve only to further burden

the administration of the very limited funds the Receiver has and hopes to marshall.  Under these

circumstances, a liquidation and distribution by the Receiver with this Court's approval is greatly

preferable to a long, costly bankruptcy proceeding for an entity with minimal assets.

Prime Rate is unlikely to have more than $160,000 available for distribution to defrauded

investors and other creditors.  A bankruptcy proceeding costing at least $50,000 will eliminate

approximately a third of the pool of funds available for distribution.  In a receivership estate with

significant assets, the time and expense of a bankruptcy proceeding might be of little

consequence.  Here, the receivership estate has minimal assets and the defrauded investors

include many senior citizens on fixed incomes who would benefit by obtaining any distribution

as soon as possible.  *See Malek*, 397 Fed. Appx. at 715 (approving liquidation through

receivership where receiver had found that "the initiation of bankruptcy proceedings would

'increase the administrative costs to be borne by the receivership estate,' [and] would cause

victims to 'wait significantly longer before receiving any payments'"); *see also SEC v. TLC Invs.*

*& Trade Co.*, 147 F.Supp.2d 1031, 1036 (C.D. Cal. 2001) (finding liquidation through district

court receivership appropriate in lieu of bankruptcy where the "entities' liabilities were greater

than their assets and because ongoing management alone will drain money out of the estate,
money that otherwise could be returned to investors").

Furthermore, the flexibility this Court can exercise over any eventual distribution will
ensure that defrauded victims and other creditors, should they choose to make claims, are
compensated as equitably as possible.[1] *See Malek*, 397 Fed. Appx. at 715 (approving
distribution plan where receiver noted that bankruptcy proceedings would cause receivership
estate to forfeit the 'latitude enjoyed by courts overseeing equity receiverships to carefully craft a
particularized plan to achieve the most equitable distribution possible'").

## II.   A Bankruptcy Filing Is Unlikely to Be Advisable in the Future.

The Commission and the Receiver do not anticipate that a bankruptcy filing will be
advisable in the future, because the additional monetary and temporal costs of a bankruptcy
filing will remain high without any corresponding benefit.  The Commission and the Receiver
anticipate that the Receiver will liquidate the estate as soon as possible to relieve the estate of the
administrative costs of maintaining the real property and to enable prompt distribution of the
estate's remaining assets and that the Receiver will then create a proposed distribution plan, in
consultation with the Commission.  Forcing Prime Rate into a bankruptcy proceeding at a later
time – *e.g.*, for purposes of distribution through the bankruptcy court – will increase the
administrative costs, thereby reducing the victims' recoveries, and delay any distribution.
Furthermore, the Receiver has already determined that avoidance actions available in a
bankruptcy proceeding – preference or fraudulent conveyance claims – are not practical or cost-
effective. (Receiver Aff. ¶ 6.j.)  Finally, the immediate and longer-term requirements of a
bankruptcy involving the administration of real estate will make a bankruptcy largely

---

[1]     Most, if not all, of the secured lenders (those holding mortgage liens on the real property
being administered) will likely have unsecured deficiency claims that they may or may not
choose to pursue.

impractical.  A Court-approved distribution by the Receiver will therefore cost substantially less

than a bankruptcy distribution and enable substantially more money to be distributed to the

victims of Ryan's Ponzi scheme, without any real disadvantage.

## CONCLUSION

For the reasons stated above, the Commission and the Receiver respectfully submit that

Prime Rate should not file a bankruptcy petition.


Dated: New York, NY
         June 2, 2011


                                        SECURITIES AND EXCHANGE COMMISSION


                                        By:    /s/ Preethi Krishnamurthy
                                               PREETHI KRISHNAMURTHY
                                               Attorney Bar Number: 516214
                                               KRISTINE ZALESKAS
                                               Attorney Bar Number: 516215
                                               U.S. Securities and Exchange Commission
                                               New York Regional Office
                                               3 World Financial Center, 4th Floor
                                               New York, NY  10281-1022
                                               Telephone:  (212) 336-0116 (Krishnamurthy)
                                               Telephone:  (212) 336-0189 (Zaleskas)
                                               Facsimile:  (212) 336-1319
                                               email:  krishnamurthyp@sec.gov
                                               email: zaleskask @sec.gov


                                        RECEIVER OVER DEFENDANT PRIME RATE
                                        AND RETURN, LLC


                                        By:    _____
                                               PAUL A. LEVINE
                                               Attorney Bar Number: 103758
                                               Lemery Greisler LLC
                                               50 Beaver Street
                                               Albany, New York 12207
                                               (518) 433-8800

impractical.  A Court-approved distribution by the Receiver will therefore cost substantially less than a bankruptcy distribution and enable substantially more money to be distributed to the victims of Ryan's Ponzi scheme, without any real disadvantage.

## CONCLUSION

For the reasons stated above, the Commission and the Receiver respectfully submit that Prime Rate should not file a bankruptcy petition.

Dated: New York, NY
       June 2, 2011

SECURITIES AND EXCHANGE COMMISSION

By: _____

        PREETHI KRISHNAMURTHY
        Attorney Bar Number: 516214
        KRISTINE ZALESKAS
        Attorney Bar Number: 516215
        U.S. Securities and Exchange Commission
        New York Regional Office
        3 World Financial Center, 4th Floor
        New York, NY  10281-1022
        Telephone:  (212) 336-0116 (Krishnamurthy)
        Telephone:  (212) 336-0189 (Zaleskas)
        Facsimile:  (212) 336-1319
        email:  krishnamurthyp@sec.gov
        email:  zaleskask@sec.gov

RECEIVER OVER DEFENDANT PRIME RATE AND RETURN, LLC

By: _____

        PAUL A. LEVINE
        Attorney Bar Number: ~~103578~~ 103758 plc
        Lemery Greisler LLC
        50 Beaver Street
        Albany, New York 12207
        (518) 433-8800