UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------
SECURITIES AND EXCHANGE COMMISSION,

                                              **Case 01:10-CV-00513-NAM-RFT**

                                Plaintiff,

        -against-

MATTHEW JOHN RYAN and
PRIME RATE AND RETURN, LLC,
individually and doing business as
AMERICAN INTEGRITY FINANCIAL CO.,

                                Defendants.
-------------------------------------------------------------------

**NOTICE OF MOTION OF RECEIVER FOR AUTHORITY TO ABANDON REMAINING
ASSETS, TO PAY  COMPENSATION AND REIMBURSEMENT OF EXPENSES, TO
APPROVE A FINAL ACCOUNTING AND TO TURN OVER REMAINING FUNDS TO
THE SECURITIES AND EXCHANGE COMMISSION FOR DISTRIBUTION TO
CREDITORS**

        PLEASE TAKE NOTICE THAT Receiver Paul A. Levine, Esq. (the "Receiver"),

through his attorneys Lemery Greisler LLC, has filed the attached motion with the Court

seeking an order granting him authority to:

        a.  Abandon Remaining Assets as having little or no value for unsecured

            creditors in this case;

        b.  To pay compensation and reimbursement of expenses;

        c.  To approve a final accounting; and

        d.  To turn over remaining funds to the Securities and Exchange Commission

        Those having objections to the requested relief should file such objections with

the Court and serve the Receiver's undersigned attorneys.

If objections are filed, the Court may choose to schedule a hearing on the motion.

If no objections are filed, the Court may grant the requested relief without a hearing.

Dated: September ___ 25th 2012

Respectfully submitted,

LEMERY GREISLER LLC

By:    /s/ Paul A. Levine
       Paul A. Levine, Esq.
       Northern District of New York
       Bar Code 103578
       50 Beaver Street
       Albany, New York 12207
       (518) 433-8800

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
SECURITIES AND EXCHANGE COMMISSION,

                                                    **Case 01:10-CV-00513-NAM-RFT**

                     Plaintiff,

    -against-

MATTHEW JOHN RYAN and
PRIME RATE AND RETURN, LLC,
individually and doing business as
AMERICAN INTEGRITY FINANCIAL CO.,

                     Defendants.
-----------------------------------------------------------------

## MOTION OF RECEIVER FOR AUTHORITY TO ABANDON REMAINING ASSETS, TO PAY  COMPENSATION AND REMIBURSEMENT OF EXPENSES, TO APPROVE A FINAL ACCOUNTING AND TO TURN OVER REMAINING FUNDS TO THE SECURITIES AND EXCHANGE COMMMSION FOR DISTRIBUTION TO CREDITORS

Receiver Paul A. Levine, Esq. (the "Receiver"), through his attorneys Lemery

Greisler LLC, respectfully moves the Court for an order granting him authority to:

a. Abandon Remaining Assets as having little or no value for unsecured

creditors in this case;

b. To pay compensation and reimbursement of expenses;

c. To approve a final accounting; and

d. To turn over remaining funds to the Securities and Exchange Commission.

### INTRODUCTION

1. This Securities and Exchange Commission ("SEC") enforcement action

was commenced on May 3, 2010. Dkt. No. 1

2. On an ex parte basis, the SEC obtained from this Court a Temporary

Restraining Order (the "TRO") which imposed an asset freeze on

Defendants Matthew John Ryan ("Ryan") and Prime Rate and Return LLC

("Prime") individually and doing business as American Integrity Financial
Co.  Dkt No. 6.

3.      The TRO appointed Paul A. Levine as temporary receiver and, among
        other powers, authorized him to retain "[e]ngage and employ persons,
        including accountants, attorneys and experts, to assist in the carrying out
        of the receiver's duties and responsibilities hereunder."

4.      As previously reported by the Receiver, the primary assets of the
        receivership estate were numerous parcels of mixed used and multi-family
        real estate located in the Cities of Albany, Troy and Cohoes, New York.

5.      The parcels were set forth at Exhibit "A" to the TRO[1]

6.      On June 7, 2010, the Court entered its Stipulation and Consent Order
        Imposing Preliminary Injunction and Other Relief Against Defendants (the
        "Preliminary Injunction").  Dkt No. 11.

7.      Among other provisions, the Preliminary Injunction provided that the
        Receiver with broad powers to preserve and Prime's assets.

8.      With respect to sales of property have a cost basis of $100,000.00 or
        more, the Preliminary Injunction provided that the Receiver shall seek
        court approval on at lease four (4) business days notice to Ryan and
        others who have filed notices of appearance in the case.

9.      On the Receiver's motion, by Memorandum – Decision and Order entered
        May 3, 2011(Docket No. 75) (the "Property Liquidation Order"), the Court
        granted the Receiver authority to begin liquidating the many parcels of

---

[1] The parcel known as 125 Wolf Road, Albany was not a parcel owned by defendants but was, rather,
simply an address one or both rented some time in the past.

marginal real estate owned by defendants. In part, the Court found that
"in view of the nature of this action, the minimal equity in the properties
and the difficulties involved in administering and maintaining them, the
court finds that granting the Receiver the flexibility he seeks is fair and
reasonable, and will best protect the victims of defendants' criminal
securities fraud."

10.   To date, the Receiver has liquidated all available personal property of
defendant Prime Rate with any value, has investigated the affairs of Prime
Rate to the extent practical and in light of the Plaintiff's prior extensive
investigation and has liquidated most of the real estate he was charged
with administering. During this time period the Receiver also administered
numerous rental properties which required him to deal with a myriad of
issues such as leasing, repairs, code violations and various tenant
matters.

11.   As will be detailed below, the Receiver was able to realize significant
monies from the real estate despite the fact that the property was,
uniformly, over encumbered far beyond any reasonable value, in disrepair,
often with code violations.

12.   During the course of his service, the Receiver personally spoke with many
victims and their attorneys and other parties in interest.

13.   The Receiver maintained a website to keep interest parties informed
(www.primerateandreturnreceiver.com).

## REQUESTED RELIEF

### a. Abandonment of Remaining Real Property and

### Personal Property with Limited Exception

#### i.  Real Estate

14.    Pursuant to the Property Liquidation Order, the Receiver under took
       extensive efforts to sell and otherwise dispose of the many parcels of real
       property subject to his authority.

15.    As detailed extensively in the Receiver's prior motion, the properties were
       in varying states of disrepair with unpaid real property taxes and were
       over leveraged with high interest loans.

16.    None of the properties had a fair market value close to the combined liens
       of unpaid real property taxes and mortgages.

17.    Nonetheless, through the hard work of his realtor and property manager,
       the Receiver was able to sell many of the properties and, despite the fact
       that all sales were short sales (where the sales price was less, often far
       less, than the mortgage debt),  was able to realize monies, albeit in
       modest amounts, for the receivership estate.

18.    Further, during his stewardship, the Receiver was able to respond to code
       violations, maintain the properties and was able, in many cases, to
       transfer them to responsible purchasers all for the benefit of the
       receivership estate, tenants and the community at large.

19.    Attached as Exhibit "A" is a summary report of the disposition of real
       property.

4

20. As summarized, certain of the properties which were financed under a land contract (where the defendants did not have title to the properties) were returned to the land contract vendors who insisted on such a treatment.

21. Despite extensive efforts, the Receiver was not able to liquidate some of the properties as set forth on Exhibit "A."

22. The Receiver requests permission to allow secured lenders and taxing authorities to pursue their liens as they may deem appropriate.

23. The only tenants that are occupying any property still subject to the Receiver's authority reside at 190 Delaware Avenue, Albany.  The Receiver has discussed the situation with the attorney for the mortgage holder on the property who has already petitioned this Court for permission, with the Receiver's consent, to proceed with a foreclosure. The lender, should the Receiver's motion to this Court be granted, can seek the appointment of a state court receiver of rents in the state court foreclosure action it will commence.

24. The Receiver cannot sell this particular property because it is owned by Matthew Ryan personally and, as a result, the forfeiture order in the related criminal case against Mr. Ryan presents an insurmountable title objection.

### ii. Personal Property

25. As to personal property, as reflected on the attached auctioneer reports of sale, the personal property of the Receivership estate in the nature of

5

vehicles, office furniture and artwork as all been liquidated at auction sales conducted by a well-respected local auction house. Exhibit "B-1" – "B-3."

26.   The Receivership estate is the holder of a secured proof of claim in the amount of $50,000.00 against the Chapter 11 estate of Hormi Holding Company, Inc., pending the United States Bankruptcy Court for the Central District of California (Case No. 10-22788).  The claim is against real property commonly known as 17 First Street, Troy, New York. Pursuant to Mr. Horowitz's confirmed Chapter 11 plan, the property is on the market and, upon information and belief, there is enough value in the property such that the Receiver's secured claim should be paid in full. Upon receipt of any such payment, the Receiver purposes to turn over the monies to the SEC for distribution as described below.

                **b.      To Pay Compensation and Reimbursement of Expenses**

27.   The Receiver has served since May 3, 2010, a period of well over two years without compensation or reimbursement of expenses.

28.   The Receiver and his law firm have expended, as detailed on the attached time and billing records, in excess of $76,856.15 in legal time through July 31, 2012.  Of course, the Receiver continues to expend time and effort on this matter.

29.   Detailed time records are attached hereto as Exhibits "C" through "I".

30.   In addition, substantial non-attorney resources of the Receiver's law firm have been devoted to the administration of the matters under the Receiver's responsibility.

31.    The Receiver's assistant Patricia Hartl has ably assisted the Receiver by

maintaining the Receiver's banking records and other financial records,

has assisted the Receiver in interfacing with his real property

management company, received mail on the case (initially a large volume

as the Receiver had certain mail redirected) and has otherwise maintained

the Receiver's files and assisted the Receiver with his various duties. See

accompanying affidavit.

32.    Risa Legg, an experienced legal assistant with many years of real estate

experience, has spent countless hours assisting the Receiver with the

numerous real estate closings involved in this case. Due to the nature of

the properties, the issues presented by the Receivership itself, judgments

on properties, the short sales, cross collateralizations of several of the

mortgages across several of the properties and other issues, none of the

closings can be characterized as "routine."  Mrs. Legg ably assisted the

Receiver by preparing the closings and in continuously following up with

buyers, realtors, title companies and with mortgage holders.  Due to the

fact that most of the closings were short sales, the Receiver needed to

obtain short sale approval from national lenders and private lenders.  This

was not an easy task. Mrs. Legg was diligent in documenting the reasons

for the short sale requests and in obtaining short sale approvals. See

accompanying affidavit.

33.    Additionally, David Edsforth, a legal assistant with the firm also provided

significant assistance to the Receiver in the nature of cataloguing the

7

defendants' books and records, removing art work for safe keeping, assisting the SEC with certain inquiries, arranging access to certain of the premises to interested parties, assisting on matters concerning vehicles and otherwise providing able assistance to the Receiver in the pursuit of his charge.

34.    In summary, the Receiver requests compensation in the amounts of:  (i) one third of monies held by the Receiver as of the date an order may be entered on this matter (as of August 31, the Receiver held $113,553.22, which would equate to a fee of $37,851.07); and (ii) one third of monies anticipated to be recovered from the sale of the 17 First Street, Troy, New York property on which the Receiver has a secured claim recognized in the Chapter 11 bankruptcy of Sandy Horowitz (see ¶ 26 above).  Thus the total fee, in the best case, would be $54,517.74 (1/3 of monies on hand plus $16,666.67); far less than the value of the actual legal time, not to mention legal assistant time, expended.

35.    Of the gross fees incurred by the Receiver (see Exhibits C to I) on an hourly billing basis, the requested compensation represents significantly less than the actual value of legal services provided.

36.    It has been the Receiver's historical practice in almost 17 years of serving as a Chapter 7 bankruptcy trustee to limit his requests for compensation, when needed, to approximately one-third of funds on hand or anticipated to be collected.  The Receiver believes that this approach, as applied in this case, is fair, reasonable and protects the interests of the victims of Mr.

Ryan's admitted fraud while providing fair, albeit less than market rate, compensation to the Receiver for his lengthy service.

37. Further, the Receiver is sharing the risk with the creditors of this case in not being compensated on what is hope to be an additional $50,000.00 recovery from the sale of 17 First Street.

38. This fee request, and the motion generally, has been reviewed with the SEC prior to the filing of this motion.

### c. To Approve Final Accounting

39. Attached hereto as Exhibit "J-1", "J-2" and "J-3" are copies of each bank statement (redacted as to account number) for the three accounts (real estate management, security deposit and general funds) maintained by the Receiver at First Niagara Bank, N. A.

40. As to the real estate account, attached hereto as Exhibit "K" is a "to date" summary of all income (primarily rentals) received by the Receiver and expenses paid. If needed, extensive detail on those items can be provided. It is important to note, of course, that the Receiver is the Receiver of Prime Rate, the entity which owned numerous properties, and was not appointed a receiver of any one of the properties. As a result, the Receiver took pains to conserve funds such that he would be able, as happened, to deal with exigencies at properties and to otherwise be prepared to address the varied and numerous issues which the properties presented on a regular basis.

41.  As to the security deposit account, attached hereto as Exhibit "L" is a "to date" summary of all deposits and expenditures (i.e. refunds of security deposits) made by the Receiver. It is important to note that certain transactions as to security deposits were made in the context of credits and debits made at closing with buyers of properties and that Mr. Ryan admitted to the Receiver that he simply did not segregate security deposits as New York law required.

42.  As the general account, attached hereto as Exhibit "M" is a "to date" summary of all deposits and expenditures made by the Receiver.

43.  As previously described, the Receiver has not taken any compensation or reimbursement of expenses to date.

44.  All expenses were proper and necessary for the prudent administration of the matters over which the Receiver was given responsibility.

45.  The Receiver respectfully requests that his accounting be approved.

### d.    Permission to Turn Over Remaining Funds to SEC for Distribution to Victims

46.  The Receiver has been informed that the SEC now has the capability to receive and distribute funds to victims of securities fraud.

47.  Therefore, the Receiver requests permission to turn over all funds, once his compensation, if any, has been set and paid and any final bills incurred by the Receiver for property administration have been paid, to the SEC for distribution to victims and other creditors who may make claims.

48.    It is respectfully suggested that such distribution be subject to further order
       of the Court upon the SEC making a motion on notice to interested parties
       outlining a proposed procedure for providing adequate notice to interested
       parties and procedures for filing claims. This request includes funds to be
       realized on the sale of 17 First Street, Troy.

49.    The Receiver also believes that this approach will conserve funds
       available for such distribution as the Receiver will not have to incur
       additional legal fees and expenses in addressing such matters which the
       SEC is prepared to undertake.

## NOTICE OF THIS MOTION

50.    Notice of this motion is being served on Mr. Ryan via his federal
       correctional facility address.  Notice of the motion is also being provided to
       Mr. Ryan's criminal attorney David Taffany, Esq., his former state court
       attorneys Bosman & Associates (Padric Moore, Esq.), to the SEC, to the
       Assistant United States Attorney involved in Mr. Ryan's criminal case and
       to other attorneys that the Receiver has had direct contact with even
       though they have not filed notices of appearances in the case.

51.    These attorneys are:  Edward Haddad, Esq., (for himself and Joel
       Glickman) Edward Marinstein, Esq. (for Winston); Stephen Greenblatt,
       Esq. (for JP Morgan), Timothy O'Connor, Esq. (who the Receiver
       understands represents various investors with respect to third party
       claims), Edward M. Connell, Esq. (for Capital Communications Federal

Credit Union), Joseph Rones, Esq. (for lenders on various properties) and
all other attorneys who have appeared in the case.

## CONCLUSION

52.   The Receiver has undertaken and completed all that can practically be
expected under the circumstances of this unfortunate case.

53.   All personal property has been liquidated at auction.

54.    All real property, which could have simply been abandoned, was
administered and offered for sale.  In numerous instances, the Receiver
was able to create value for the estate where the properties were grossly
over encumbered by valid liens.  Continued administration would only
drain resources that otherwise can go to creditors.

55.   The Receiver's accounting is proper in all respects.

56.   And, the SEC is ready, willing and able to assume responsibility for
distributing funds to creditors; a mission that appears consonant with its
duties and watch dog role in such matters.

WHEREFORE it is respectfully requested that the Court:

e.  Authorize the Receiver to abandon Remaining Assets as having little or no
value for unsecured creditors in this case;

f.  Authorize the Receiver to pay himself compensation and reimbursement of
expenses as approved by the Court ;

g.  Approve the Receiver's final accounting;

    h.  Authorize the Receiver to turn over remaining funds and funds to be received to the Securities and Exchange Commission for distribution to creditors upon further order of the Court after notice and hearing; and

    i.  Grant such other and further relief as may be deemed just, necessary and proper.

Dated:  September ___, 2012

Respectfully submitted,

LEMERY GREISLER LLC

By:   /s/ Paul A. Levine
      Paul A. Levine, Esq.
      Northern District of New York
      Bar Code 103578
      50 Beaver Street
      Albany, New York 12207
      (518) 433-8800

F:\wpdata\3082.000\3082.002\Motion to Abandon\motion.doc