UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
++++++++++++++++++++++++++++++++++++++++++++++++++

**SECURITIES AND EXCHANGE COMMISSION,**

                     **Plaintiff,**

**E. COLLEEN RYAN,**

                     **Intervenor Plaintiff,**

      **–v-**                                         1:10-CV- 513 (NAM/RFT)

**MATTHEW JOHN RYAN and PRIME RATE AND
RETURN, LLC, individually and doing business as
AMERICAN INTEGRITY FINANCIAL CO.,**

                     **Defendants**.

++++++++++++++++++++++++++++++++++++++++++++++++++

**CAPITAL COMMUNICATIONS FEDERAL CREDIT
UNION,**

                     **Intervenor.**

++++++++++++++++++++++++++++++++++++++++++++++++++

APPEARANCES:
U.S. Securities & Exchange Commission
Kristine M. Zaleskas, Esq., of counsel
Preethi Krishnamurthy, Esq., of counsel
Steven G. Rawlings, Esq., of counsel
3 World Financial Center
New York, New York 10281
Attorneys for Plaintiff

Schopf Law, PLLC
Jonathan G. Schopf, Esq., of counsel
632 Plank Road, Suite 210
Clifton Park, New York 12065
Attorney for Intervenor Plaintiff

Matthew John Ryan
17951-052
FORT DIX
FEDERAL CORRECTIONAL INSTITUTION
P.O. BOX 2000
JOINT BASE MDL, NJ 08640
Defendant, *Pro Se*

Carter, Conboy, Case, Blackmore, Maloney & Laird, P.C.
Edward M. Connell, Esq., of counsel
20 Corporate Woods Boulevard
Albany, New York 12211
Attorney for Intervenor Capital Communications
Federal Credit Union

**Hon. Norman A. Mordue, Senior U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## INTRODUCTION

Presently before the Court are motions by plaintiff Securities and Exchange Commission ("SEC") for summary judgment (Dkt. No. 128) and release of funds to the Clerk of the Court (Dkt. No. 132). The Court has received no opposition. As set forth below, the Court grants both motions.

## FACTS

**SEC Action**

In the instant action, the undisputed facts are as follows. On May 3, 2010, the SEC brought a civil action against defendants Matthew John Ryan and Prime Rate and Return LLC ("Prime Rate"), individually and d/b/a American Integrity Financial Co. ("American Integrity"). Prime Rate was a limited liability company of which Ryan was the sole member. The SEC alleged an ongoing fraud orchestrated by Ryan and Prime Rate and sought the following relief: a judgment holding that defendants violated the securities laws, an injunction restraining

-2-

defendants from committing future violations, appointment of a receiver, disgorgement of ill-gotten gains, and related relief.

The SEC complaint sets forth three claims against both defendants: first, securities fraud in violation of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a); second, securities fraud in violation of Section 10(b) of the Exchange Act, 15 U.S.C. §§78j(b), and Rule l0b-5, 17 C.F.R. §240.l0b-5; and third, violation of Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a),(c), by offering and selling American Integrity securities without registering the offering.

On May 3, 2010, the Court granted the SEC's application for emergency relief and entered an order to show cause imposing a temporary restraining order, asset freeze, and other emergency relief and appointing a receiver over Prime Rate. On June 7, 2010, on the parties' consent, the Court entered a preliminary injunction continuing the interim relief.

On April 2, 2013, the Court entered a final consent judgment against Prime Rate ordering Prime Rate to pay a total of approximately $7.1 million in disgorgement and prejudgment interest and deeming that obligation satisfied by the receiver's prior payment to the SEC of $71,927 plus certain potential future payments. In August 2013, the receiver collected an additional $8,346.57, which he remitted to the SEC. On October 18, 2013, the Court discharged the receiver. Thereafter, the receiver recovered an additional $720, to be disbursed by the creditor directly to the SEC.

**Criminal Prosecution**

On June 18, 2010, the Government indicted Ryan on one count of securities fraud, 15 U.S.C. §§ 78j(b); 78ff; 17 C.F.R. §240.10b-5 (count one), and nine counts of mail fraud, 18 U.S.C. §§ 2, 1341 (counts two through ten), with a forfeiture allegation, stemming from the same

facts as those underlying the SEC action. *United States v. Ryan*, 1:10-CR-319 (N.D.N.Y.). On February 22, 2011, Ryan pleaded guilty to count one, which charged that he used a manipulative and deceptive device or contrivance in contravention of SEC rules and regulations by withdrawing and misappropriating for his own use funds invested in American Integrity, and that such withdrawals and misappropriations were inconsistent with the representations made to, and the objectives of, American Integrity investors. Counts two through ten were dismissed. In the plea agreement, Ryan consented to the entry of an order directing him to pay restitution as determined by the Court. At sentencing on October 12, 2011, the Court sentenced Ryan to 121 months incarceration followed by three years supervised release. Subsequently, the Court held a *Fatico* hearing regarding restitution.[1] The Government introduced the testimony of FBI Agent Samantha Tran Estevez. Defendant, represented by counsel, testified as well. Based on this testimony and the documents submitted by both parties, the Court issued a detailed Amended Memorandum-Decision and Order (Amended Restitution Order) of $3,816,031.95 (1:10-CR-319, Dkt. No. 71).

**Admissions in Plea Agreement**

In the plea agreement in the criminal action (1:10-cr-319, Dkt. No. 9), Ryan admitted the following:

> 4. Elements of the Offense. MATTHEW JOHN RYAN understands the following legal elements of the offense of securities fraud, and admits that those elements accurately describe his criminal conduct:
> a. First, defendant RYAN used and employed manipulative and deceptive devices and contrivances in contravention of the rules and regulations of the Securities and Exchange Commission, in that defendant RYAN, in connection with the purchase or sale of a

---

[1] *See United States v. Fatico*, 579 F.2d 707 (2d Cir. 1978).

security, to wit, an American Integrity contract: (i) employed a device, scheme or artifice to defraud, or (ii) made an untrue statement of a material fact or omitted to state a material fact which made what was said, under the circumstances, misleading, or (iii) engaged in an act, practice or course of business that operated, or would operate, as a fraud or deceit upon the purchaser or seller.

b. Second, that the defendant acted willfully, knowingly and with the intent to defraud.

c. Third, that the defendant knowingly used, or caused to be used, any means or instrumentality of interstate commerce or the use of the mails in furtherance of the fraudulent conduct.

5. <u>Factual Basis for the Plea</u>. MATTHEW JOHN RYAN admits the following facts, which establish his guilt with respect to the offense of conviction:

### Overview of the Conduct

a. From in or about February 2002 through in or about May 2010 (the "relevant period"), the defendant, MATTHEW JOHN RYAN, was the founder, owner and sole managing member of Prime Rate and Return, LLC ("Prime Rate") doing business as American Integrity Financial Co. ("American Integrity"). For most of the relevant period, defendant was a registered representative of a registered broker-dealer and operated out of a branch office of the broker-dealer located in Troy, in the State and Northern District of New York.

b. Prime Rate d/b/a American Integrity is a limited liability company incorporated in Delaware in April 2001 with its principal place of business in Troy, New York. Neither Prime Rate nor American Integrity is registered in any capacity with the Securities and Exchange Commission ("Commission"). Neither Prime Rate nor American Integrity has offered securities pursuant to an offering registered with the Commission. The offer of the security, to wit, American Integrity contracts, did not qualify for any exemption from registration under the federal securities laws.

c. From in or about February 2002, defendant RYAN was soliciting and receiving money from investors as a representative of American Integrity. Defendant did so to raise money for the general use of a business enterprise or to finance substantial investments. Defendant offered and sold investors contracts with American Integrity pursuant to which American Integrity promised to pay a "guaranteed" fixed rate of interest on the initial investment. These contracts were for a fixed term, usually three years, after which the investor could either withdraw his or her investment or roll the investment over into another fixed term with a fixed rate of return. Defendant offered rates of return that varied from investor to investor and ranged from 3.85% to 9.35% annually.

d. American Integrity investors were primarily interested in the profit, in the form of fixed interest, expected from their transactions by pooling their funds

with American Integrity and RYAN. The American Integrity contracts were offered to a broad segment of the public, and were sold to more than sixty investors who purchased same with their own funds or money. The American Integrity investors understood that they were entrusting their funds to American Integrity for the purpose of receiving a stated return. Investors played no role in American Integrity's operations and were entirely dependent upon RYAN's efforts to invest their funds profitably. Defendant RYAN made periodic payments to, or for the benefit of, investors. Defendant represented that these payments were for interest on the investments.

e. Defendant periodically sent to each investor a Statement of Account Values ("account statements"). Each account statement reflected the investor's purported account number, interest rate, and account value, and the amount of interest claimed to have been credited to the account. Each of these purported account statements refers to the investor's current interest rate as a "minimum guaranteed interest rate." The statements appear to come from an entity called American Integrity in Manhattan. The account statements were sent utilizing the United States Postal Service (USPS).

f. To give the appearance of legitimacy to American Integrity, defendant RYAN falsely represented to investors that American Integrity was a substantial Manhattan-based financial services firm with numerous employees and for which he was merely a representative. Defendant made these misrepresentations orally and through documents he sent to investors through the mails and the Internet.

g. Defendant's communications with investors and prospective investors gave the firm address as 208 East 51st Street in midtown Manhattan. In fact, as defendant well knew, the address was simply a mail drop to create the false impression that American Integrity had an office in Manhattan. Likewise, the toll-free number defendant established was merely an answering service that relayed messages to defendant, and American Integrity had no "representative" other than defendant.

h. To reinforce the false impression that American Integrity was a substantial firm, defendant created fictitious American Integrity employees and used their names in correspondence with investors.

i. Defendant made false representations to a number of investors that their investments were safe, by representing that investments were insured up to specific dollar amounts, by the Securities Investor Protection Corporation (SIPC). Further, defendant made false representations to a number of investors that American Integrity was qualified to serve as a custodian of individual retirement accounts ("IRA") and other tax-deferred investments and to receive roll-overs from such tax-deferred investments and preserve their tax-deferred status.

j. The Internal Revenue Service ("IRS") rules establish that only banks, credit unions, savings and loan institutions, and certain specific NonBank Trustees ("NBTs") can serve as qualified custodians of IRAs. A NBT must submit an

application to, and obtain approval from, the IRS before being permitted to serve as a qualified custodian of IRAs. Neither the defendant, nor American Integrity, nor Prime Rate has ever been an approved NBT.

k. Since at least 2004, defendant RYAN used funds that investors invested in American Integrity for multiple purposes he concealed from investors, including (i) to repay loans for the purchase or refinancing of real estate held in Prime Rate's name; (ii) to pay other investors' purported returns or interest using the principal investments of other investors; and (iii) to pay his own personal expenses.

l. Since in on or about October 2004, defendant deposited American Integrity investor funds in a bank account in the name of "Prime Rate & Return Dba American Integrity" (the "American Integrity Account"). Defendant is and has been the only signatory for this account. As of March 31, 2010, defendant had deposited approximately $5.8 million into the American Integrity Account. Of that amount, more than $4.8 million, or approximately 83% of total deposits, were investor funds.

m. As of March 31, 2010, defendant withdrew or transferred from the American Integrity Account (i) $1.9 million to pay American Integrity investors purported interest and principal; (ii) $845,000 to pay Prime Rate; (iii) $265,000 to pay loans on real estate owned by defendant and/or Prime Rate; (iv) $125,000 to pay expenses related to his vehicles; and (v) $400,000 by way of cash or checks.

## Execution of the Securities Fraud

n. From in or about February 2002 through in or about May 2010, in the Northern District of New York and elsewhere, defendant MATTHEW JOHN RYAN, unlawfully, knowingly and willfully, by use of means and instrumentalities of interstate commerce and the mails, directly and indirectly did use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of a security, to wit, American Integrity contracts, in contravention of Rule l0b-5 (17 C.F.R. Section 240.l0b-5) of the Rules and Regulations promulgated by the United States Securities and Exchange Commission, and the defendant did (a) employ a device, scheme and artifice to defraud, (b) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of the circumstance under which they were made, not misleading, and (c) engage in acts, practices and a course of business which would and did operate as a fraud and deceit upon certain persons and entities in connection with the purchase and sale of a security, to wit, American Integrity contracts.

## Ways and Means

o. Defendant MATTHEW JOHN RYAN would and did communicate by telephone in interstate commerce from the Northern District of New York on numerous occasions with American Integrity investors and prospective investors, and the defendant would and did cause account statements and other information regarding such investments to be sent to his clients through the

>       mails and the Internet within the Northern District of New York, as set forth
>       in Count One of the indictment. Said communications and account statements
>       misrepresented the nature of American Integrity itself, and the safety of
>       investing in American Integrity contracts to include misrepresentations in a
>       number of instances about being insured, and protected by SIPC,
>       misrepresentations regarding the IRA and other tax-deferred status on
>       American Integrity investments, and misrepresentations regarding a given
>       investor's account value and the "minimum guaranteed interest rate."
>       p. Defendant MATTHEW JOHN RYAN would and did withdraw and
>       misappropriate for his own use funds invested in American Integrity. These
>       withdrawals and misappropriations were inconsistent with the representations
>       made to, and the objectives of, American Integrity investors.
>       ***

# DISCUSSION

**Standard on Summary Judgment**

Summary judgment is appropriate when there is no genuine issue with regard to any material fact, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010). Stated otherwise, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The district court's role on a summary judgment motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kaytor*, 609 F.3d at 545. In making this determination, the court must "resolve all ambiguities and draw all factual inferences in favor of the party opposing the motion." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citation omitted). In sum, summary judgment is proper only when, if all permissible inferences and credibility questions are resolved in favor of the party against whom judgment is sought, "there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 249-50 (1986).

**First Cause of Action**

The first cause of action alleges that defendants violated Section 17(a) of the Securites Act, 15 U.S.C. § 77q(a). The complaint states:

> The American Integrity investments are securities within the meaning of Section 2(1) of the Securities Act [15 U.S.C. § 77b(l)] and Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c(a)(10)].
>
> From at least 2002 through the present, the Defendants, directly or indirectly, singly or in concert, by use of the means or instruments of transportation or communication in, or the means or instrumentalities of, interstate commerce or by the use of the mails, in connection with the offer or sale of securities, knowingly or recklessly: a) employed, are employing or are about to employ devices, schemes and artifices to defraud; b) have obtained, are obtaining or are about to obtain money and property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or c) have engaged, are engaging or are about to engage in transactions, practices or courses of business which have operated, operate or will operate as a fraud and deceit upon investors.
>
> By reason of the foregoing, the Defendants, directly or indirectly, singly or in concert, have violated, are violating, and unless restrained and enjoined will again violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

(Paragraph numbering omitted.)

Section 17(a) makes it unlawful for any seller of securities, using the mails or an instrumentality of interstate commerce, directly or indirectly

> (1) to employ any device, scheme, or artifice to defraud, or
> (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
> (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

The factual admissions in Ryan's guilty plea establish all elements of the Section 17(a)

claim. Resolving all ambiguities and factual inferences in favor of defendants, the Court finds that the undisputed material facts establish the SEC's entitlement to summary judgment on this cause of action as a matter of law.

**Second Cause of Action**

The second cause of action alleges that defendants violated Section 10(b) of the Exchange Act, 15 U.S.C. §§78j(b), and Rule l0b-5, 17 C.F.R. §240.l0b-5, promulgated thereunder. The complaint states:

> From at least 2002 through the present, the Defendants, directly or indirectly, singly or in concert, by use of the means or instruments of transportation or communication in, or the means or instrumentalities of, interstate commerce or by the use of the mails, in connection with the offer or sale of securities, knowingly or recklessly: a) employed, are employing or are about to employ devices, schemes and artifices to defraud; b) have obtained, are obtaining or are about to obtain money and property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or c) have engaged, are engaging or are about to engage in transactions, practices or courses of business which have operated, operate or will operate as a fraud and deceit upon investors.
>
> By reason of the activities herein described, the Defendants, singly or in concert, directly or indirectly, have violated, are violating, and unless restrained and enjoined will again violate Section 10(b) of the Exchange Act [15 U.S.C. §§78j(b)] and Rule l0b-5 [17 C.F.R. §240.l0b-5] promulgated thereunder.

(Paragraph numbering omitted.)

Under Section 10(b), it is unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails

> To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest

-10-

or for the protection of investors.

(Footnote omitted.) The Second Circuit explains: "In order to establish primary liability under § 10(b) and Rule 10b-5, a plaintiff is required to prove that, in connection with the purchase or sale of a security, the defendant, acting with scienter, made a material misrepresentation ... or used a fraudulent device." *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1467 (2d Cir. 1996). "Scienter, as used in connection with the securities fraud statutes, means intent to deceive, manipulate, or defraud, or at least knowing misconduct." *Id.* (citations omitted). Ryan's plea of guilty in the criminal prosecution establishes every element of the second cause of action, including the scienter element. Resolving all ambiguities and drawing all factual inferences in favor of defendants, the Court finds no material question of fact barring summary judgment for the SEC on this cause of action.

**Third Cause of Action**

In the third cause of action, plaintiff alleges defendants violated Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a),(c), as follows:

> The American Integrity investments alleged herein constitute "securities" as defined in the Securities Act and the Exchange Act.
> 
> No registration statement was filed for the offering of American Integrity investments. Nor did the offering and sale of those investments qualify for any exemption from the registration requirements set forth in Section 5 of the Securities Act and the rules promulgated thereunder. Among other things, Defendants conducted a general solicitation through newspaper advertisements and American Integrity's website and raised more than $1 million. Defendants also failed to provide unaccredited investors with financial information such as audited balance sheets or financial statements.
> 
> Ryan and Prime Rate, singly or in concert, directly or indirectly, have made use of the means or instruments of transportation or communication in interstate commerce, or of the mails, to offer and sell securities through the use or medium of a prospectus or otherwise, or have carried or caused to be

-11-

>carried through the mails or in interstate commerce, by any means or instruments of transportation, securities for the purpose of sale or for delivery after sale, when no registration statement has been filed or was in effect as to such securities and when no exemption from registration was available.
>
>By reason of the foregoing Ryan and Prime Rate, singly or in concert, directly or indirectly, have violated, are violating, and unless enjoined will again violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

(Paragraph numbering omitted.)

>Section 5, 15 U.S.C. § 77e, provides in pertinent part:
>
>>(a) Sale or delivery after sale of unregistered securities
>>Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly –
>>(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or
>>(2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale.
>>***
>>(c) Necessity of filing registration statement
>>It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security....

Thus, Section 5 "requires that securities be registered with the SEC before any person may sell or offer to sell such securities." *SEC v. Cavanagh*, 445 F.3d 105, 111 (2d Cir. 2006).

Ryan's plea agreement establishes that he offered and sold securities as to which there was no registration statement and that he used interstate commerce to do so. Defendants do not argue that the transactions are exempted under 15 U.S.C. § 77d, nor is there any factual basis upon which defendants could successfully make such an argument. Resolving all ambiguities and drawing all factual inferences in favor of Defendants, the Court finds no material question of fact

-12-

barring summary judgment for the SEC on this cause of action.

**Permanent Injunction Against Ryan**

In the complaint and on this motion, the SEC requests a permanent injunction restraining and enjoining Ryan from committing future violations of each of the securities laws and rules. *See* Securities Act Section 20(b),15 U.S.C. §§ 77t(b), and Exchange Act Section 21(d)(1), 15 U.S.C. § 78u(d)(l). The Second Circuit explains:

> Injunctive relief is expressly authorized by Congress to proscribe future violations of federal securities laws. The SEC must demonstrate that there is a substantial likelihood of future violations of illegal securities conduct. The court looks at the following factors:
>> the fact that the defendant has been found liable for illegal conduct; the degree of scienter involved; whether the infraction is an "isolated occurrence;" whether defendant continues to maintain that his past conduct was blameless; and whether, because of his professional occupation, the defendant might be in a position where future violations could be anticipated.

*S.E.C. v. Cavanagh*, 155 F.3d 129, 135 (2d Cir. 1998) (footnotes and citations omitted).

Injunctive relief is clearly warranted here. Ryan has pleaded guilty to violations of Exchange Act Section 10(b), Rule 10b-5, and Securities Act Sections 17(a), 5(a), and 5(c). His guilty plea, which details his elaborate Ponzi scheme, demonstrates a high degree of scienter. His criminal acts are far from isolated; indeed, in the plea agreement, he admits that over the course of eight years he committed repeated, calculated fraudulent acts involving more than 50 people and millions of dollars. In his sworn testimony before the SEC and in the *Fatico* hearing, however, Ryan maintained that his past conduct was blameless; in fact, he argued that he had not committed securities fraud at all and that the victims' losses resulted not from his conduct but

-13-

from the SEC's intervention.[2] As the Court observed in its restitution decision (1:10-CR-319, Dkt. No. 71): "Ryan has exhibited highly deceitful conduct over the course of years. He has flagrantly exploited his victims' trust solely for his own benefit. He exhibits no remorse; indeed, he continues to insist – even after pleading guilty – that he has done nothing wrong."

---

[2] For example, Ryan testified on cross-examination in the *Fatico* hearing:
    Q    And you're the one who guaranteed these high interest rates to these elderly people that invested with you?
    A    You find one person that I never paid when they asked for money. Can you state a person that ever asked for money they never received a check?
    Q    You mentioned some of the victims in this case. Do you recall [Victim 8]?
    A    I do.
    Q    Did you meet with her and get money from her?
    A    Numerous times.
    Q    Did you ever pay her back?
    A    I paid her some money.
    Q    Not all of it, though, did you?
    A    She never asked for it all. ...
    Q    And the money you took from her was the money that her husband had left her after 51 years of marriage and it was an IRA account, wasn't it?
    A    I put it in and out and she'll tell you that I had it in American Integrity, then I would put it in Hartford, then Hartford would come back, we'd take it out when the market was high.
    Q    If you told her that, then why is she now having sleepless nights and physical and mental anguish over what you did to her?
    A    Because the SEC came in and said it wasn't fit, what I was doing.
\*\*\*\*
During the same hearing, Ryan testified regarding another victim:
    Q    And you met with [Victim 17] at her home when you signed her up to be a client, correct?
    A    I met with [Victim 17] probably six times a year.
    Q    At her home?
    A    At her home.
    Q    This is the same [Victim 17] that's son was in an accident and is a paraplegic?
    A    That's correct, he's in a wheelchair.
    Q    And this is the same [Victim 17] that after her divorce got a hundred grand and you convinced her to invest it with you?
    A    That's correct.
\*\*\*
    Q    Yet you took her money and now she's out a lot of money?
    A    And that's because the SEC came in. She was receiving money every time. I paid her any time she needed it. Again, like I said, she needed $10,000 for something for her van, she got a check for $10,000 in February 2009.

Based on these factors and its own observations of Ryan throughout this and the criminal proceeding, the Court finds a substantial likelihood that, upon his release, Ryan will try to solicit investors for new securities fraud schemes. *See Cavanagh*, 155 F.3d 135. Although the SEC consent order bars him from associating with brokers, dealers, investment advisers, and certain other types of securities industry firms, Ryan has proven himself adept at creating the illusion of legitimacy. In view of Ryan's extensive experience in the securities and investment industry,[3] the egregious nature of his criminal conduct as discussed above, and his adamant refusal to acknowledge his wrongdoing or its impact on his victims, there is great potential that Ryan will again engage in illegal securities conduct. Accordingly, the Court issues a permanent injunction restraining and enjoining Ryan from committing future violations of each of the securities laws and rules.

**Disgorgement**

Based on all the circumstances, the SEC's request to order disgorgement but deem the obligation satisfied by the restitution order is granted.

**Release of Funds to Clerk of Court**

The SEC asks the Court to direct that the funds currently being held by the SEC or otherwise received in connection with this litigation be transferred to the Clerk of this Court for distribution pursuant to the Amended Memorandum-Decision and Order (Amended Restitution Order) in the criminal action (1:10-CR-319, Dkt. No. 71) and that any future funds the SEC may

---

[3] As the complaint in the instant action states:
> Ryan has been in the securities industry since at least 1997 and is licensed to sell life insurance, annuities, and mutual funds. For most of the relevant period, Ryan was a registered representative of a registered broker-dealer and operated out of a branch office of the broker-dealer located in Troy, New York.

collect in this case be disbursed directly to the Clerk of the Court for the same purpose until the restitution order is satisfied, without further order of the Court. The Court approves this proposed distribution plan on the ground that it is fair and reasonable.

The Court has a thorough knowledge of both the SEC action and the criminal prosecution. Both are based on the same fraudulent conduct committed against the same victims. At the *Fatico* hearing, FBI agent Estevez testified that she based her restitution figures on a number of sources, including the SEC's analysis of all deposits and withdrawals in American Integrity's account at Bank of America for the years 2004 to 2010.[4] While in some respects the SEC's figures differ from the FBI's figures, Agent Estevez explained the reasons for the differences. The Court took all the evidence into account and is satisfied that the SEC's analysis has been properly integrated into the restitution decision along with all other available evidence. The restitution decision reflects the best efforts of the SEC, the prosecution, the defense, and the Court, to reach the most fair and reasonable outcome possible under difficult circumstances. Additional proceedings would not produce a more fair and reasonable result. *See generally S.E.C. v. Wang*, 944 F.2d 80, 85 (2d Cir. 1991) ("[O]nce the district court satisfies itself that the distribution of proceeds in a proposed SEC disgorgement plan is fair and reasonable, its review is at an end."). The motion for release of funds is granted.

## CONCLUSION

It is therefore

ORDERED that the motion for summary judgment (Dkt. No. 128) by the Securities and

---

[4] The SEC analysis, conducted in the context of the instant case, is explained in detail in the declaration of Simone Celio, Jr. a staff accountant in the SEC's Broker-Dealer Inspection Program (Dkt. No. 5-2), and accompanying exhibits.

-16-

Exchange Commission is granted in its entirety; and it is further

ORDERED that Matthew John Ryan is hereby permanently restrained and enjoined from committing future violations of the securities laws and rules; and it is further

ORDERED that defendants shall disgorge all ill-gotten gains, and this obligation is satisfied by the Amended Memorandum-Decision and Order (Amended Restitution Order) dated May 1, 2015, entered in *United States v. Ryan*, 1:10-CR-319 (N.D.N.Y.) (Dkt. No. 71); and it is further

ORDERED that the motion for release of funds (Dkt. No. 132) by the Securities and Exchange Commission is granted, and the Securities and Exchange Commission is hereby ordered to remit all funds currently being held by the Securities and Exchange Commission or otherwise received in connection with the above-captioned matter to Lawrence K. Baerman, U.S. District Court Clerk, Federal Building, P.O. Box 7367, 100 South Clinton Street, Syracuse, New York 13261-7367 for distribution in accordance with the Amended Memorandum-Decision and Order (Amended Restitution Order), dated May 1, 2015, entered in *United States v. Ryan*, 1:10-CR-319 (N.D.N.Y.) (Dkt. No. 71); and it is further

ORDERED that any future funds the Securities and Exchange Commission may collect or otherwise receive related to this action are to be transferred to the Clerk of the Court account in *United States v. Ryan*, 1:10-CR-319 (N.D.N.Y.) for distribution pursuant to the Amended Memorandum-Decision and Order (Amended Restitution Order) entered in that case (Dkt. No. 71), until the Amended Restitution Order is satisfied, without further order of this Court; and it is further

ORDERED that the Clerk of the Court is directed to serve copies of this Memorandum-Decision and Order in accordance with the Local Rules of the Northern District of New York.

IT IS SO ORDERED.

Date: September 4, 2015
      Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge